## SUPREME COURT.

JOHN B. UNDERHILL, executor, &c., of PETER UNDERHILL, agt. ELIJAH CRAWFORD and MINOTT MITCHELL.

Where an action is brought by an executor, as executor upon an order of revivor in his name, and it appears on the trial that the order of revivor is standing in full force, such order is *conclusive* upon the judge at the trial that the action was properly revived and continued in the name of the executor.

Where a joint loan of money is made to two, the law, in the absence of any fact or circumstances, except the mere loan, would imply a joint promise to repay it; but if the lender agrees to take, and does take, the express promise of one of the two for the repayment, there is no room nor occasion for the laws raising the joint implied assumpsit.

Where a loan of $500 was alleged to be made to C. & M. jointly, and the lender accepted the note of C. for $225, signed by M. as "surety," and the individual note of C. without being signed at all by M. for $275, *held*, that the *legal presumption* was, that the $500 was loaned to C., and that the lender agreed to look to him exclusively for the payment; such presumption was not conclusive, but might be rebutted by proof.

If the debt was the debt of C. alone, and M. was not originally liable, then any subsequent parol promise by M. to pay the $275 note was void by the statute of frauds.

Where it appeared that there was not sufficient evidence to authorize the judge to submit the question, of M.'s original liability for the amount of the $275 note, to the jury, *held*, where that question was submitted to the jury, that the defendant M. had a right to avail himself of the error on a motion for a new trial, he having objected to all the evidence given and offered on the part of the plaintiff to show his liability, and moved for a non-suit, which could not be granted because of the right of the plaintiff to recover on the other note.

*New - York, Special Term, November*, 1859.

MOTION for a new trial, by defendant Mitchell.

J. M. VAN COTT *and* WM. SILLIMAN, *for defendant Mitchell*.
P. Y. CUTLER, *for plaintiff*.

SUTHERLAND, Justice. As to three of the notes on which this action was brought, amounting at the time of the trial to

$1,424.75, there was no answer or defence by either of the defendants, and the plaintiff was entitled to a verdict for the amount of the three notes, and the judge before whom the case was tried was right in denying the motion for a non-suit, provided a recovery could be had in the name of John B. Underhill, as executor, in whose name, as executor, &c., the action had been revived on the death of Peter Underhill, the original plaintiff.

I think the order of revivor was at the trial conclusive upon the point, whether the action had been properly revived in the name of John B. Underhill as executor, and whether a recovery could be had in his name.

If the executor sold and transferred the notes before the order of revivor, so that, at the time the order was made, neither he, as executor, nor the estate of Peter Underhill had any interest in the continuance of the action, and for that reason the action should not have been revived in his name, then the defendants should have opposed the making of the order; or should have moved to vacate it on that ground; but the order standing in full force, was conclusive upon the judge at the trial, that the action was properly revived and continued in the name of the executor.

The plaintiff was, therefore, entitled to a verdict for the amount of the three notes not contested by the answer, and the judge could not dismiss the action or grant the non-suit.

As to the fourth note mentioned in the complaint, the question was, whether the defendant Mitchell was jointly liable with the defendant Crawford for the amount of that note, as so much money loaned and advanced to Mitchell & Crawford. Mitchell was not and could not be made liable on the note, for the note was made by Crawford alone, and was not signed by Mitchell.

The complaint, after setting out two dated notes made by Crawford & Mitchell, and claiming to recover the amount thereof, then states that the plaintiff, on the 3d day of July, 1841, loaned and advanced to the defendants $500, which they agreed to pay to the plaintiff on demand; that they

agreed to give the plaintiff therefor their joint and several notes payable on demand; and that, thereupon, "and for the consideration of the $500 loaned and advanced as aforesaid," Crawford made two promissory notes, payable on demand, one for $275, and the other for $225, setting them out; that thereupon and at the time the notes were drawn, Mitchell signed his name to the $225 note, as follows: "Minott Mitchell, surety," but neglected and omitted to sign the $275 note; that the $500 so loaned and advanced was paid to Mitchell with the express understanding that he should be held responsible; that the interest upon the $500 included in the two notes had been paid by the defendants yearly, and every year up to May 1st, 1850, and the defendants, or one of them, had indorsed the payment of interest on each note when it was paid.

Mitchell in his answer denies that the $500 was loaned to Crawford and him, and he denies that the $500 was paid to him, and he denies sufficiently, and in form, I think, to put in issue, so far as material, all the other allegations of the complaint relating to the joint loan of the $500, or the joint liability of the defendants therefor, or thereupon; except that he does not deny that he signed the $225 note as surety, as alleged in the complaint; nor does he deny that he has paid interest on the $225 and $275 notes, but avers, that whenever he has paid interest on either of the notes, he paid it for Crawford, and at his request, taking Crawford's notes, shortly afterwards, for the same.

· The question, then, under the pleadings was, as to the joint liability of the defendants for the amount of the $275 note upon a joint loan.

It may be, that the plaintiff was entitled to a verdict against Crawford for the amount of the $275 note, either on the note or for so much money loaned to Crawford; but Mitchell could not be liable unless the loan of the $500 was a joint loan to him and Crawford.

And conceding that the loan was to Crawford and Mitchell, and not to Crawford alone, Mitchell was not liable for the amount of the $275 note, if Peter Underhill who loaned the

money, at the time he loaned it, intended to take and did take the individual note of Crawford for the $275, intending and agreeing to look to Crawford's note and Crawford's individual responsibility for re-payment of the money.

On a joint loan of money to two, the law, in the absence of any fact or circumstance, except the mere loan, would imply a joint promise to repay it; but if the lender agrees to take and does take the express promise of one of the two for the re-payment, there is no room or occasion for the law's raising the joint implied assumpsit.

But as the answer of Mitchell in this case, instead of admitting a joint original loan and averring that the lender agreed to take the individual note of Crawford, and look to him alone for payment, denies the joint loan, and does not specifically set up any such agreement, I am inclined to think that, under the pleadings, the question of Mitchell's liability for the amount of the $275 note must depend upon the question whether the loan was originally joint or not.

Now, as the complaint alleges that the $500 was loaned at one time and as one loan, the acceptance by the lender of the $225 note, signed by Mitchell *as surety* without objection, was *prima facie* evidence, irrespective of other allegations in the complaint, not only that the $225, but that the whole $500 was loaned to Crawford, and not to him and Mitchell.

The same remark will apply to the acceptance of the $275 note signed by Crawford only.

The evidence on the trial was, and it appears to have been a conceded fact, that the $500 was paid to Crawford and not to Mitchell, as alleged in the complaint, and that Mitchell was not present when the money was paid to Crawford.

Nor do I find the least evidence of the allegations in the complaint, that the defendants promised to give their notes for the $500, and that Mitchell omitted and neglected to sign the $275 note; or that Mitchell was ever asked or promised to sign the $275 note.

Crawford, the co-defendant of Mitchell, swore, in general words, "that the $500 was a loan to us jointly by Peter

Underhill," without stating that Peter Underhill so understood it, or any fact or circumstance to show that Peter Underhill so understood it. For aught that appears, Crawford was only swearing to his legal conclusion and what he thought.

The only evidence on the part of the plaintiff, in addition to this, to show even that the loan was a joint loan to both defendants, was the oral testimony of Crawford, and certain documentary evidence to show that the $500 was paid by Crawford to Mitchell to be used by him to discharge their joint liabilities and for their joint use and benefit, and was, in fact, so used, and the testimony of the plaintiff's attorney, Dusenberry, who testified, after the four notes on which the action is brought were placed in his hands for collection, that he had several conversations with Mitchell, in which Mitchell promised to pay the notes and offered to pay the interest; but, on his cross-examination he stated, that nothing was said about the note not signed by Mitchell as distinguished from the other notes; that he did not call Mitchell's attention to it.

To contradict Crawford, and to explain the fact of some of the indorsements on the $275 note being in Mitchell's handwriting, and to show, from business transactions and relations between him and Mitchell, that even the subsequent use of the $500 for their joint benefit, as testified to by Crawford, would have been consistent with the presumption arising from the notes, that the original loan was to Crawford, and on his responsibility alone, certain evidence, oral and documentary, was offered on the part of Mitchell, a part of which was received and a part rejected.

Without noticing particularly the exceptions taken on the part of the defendant to the rejection of this evidence, I think the learned judge who tried the cause erred in submitting the question of the liability of the defendant Mitchell, for the amount of the $275 note, to the jury. I do not think the evidence, which was given and received on the trial, under the pleadings, authorized him to submit that question to the jury.

The legal presumption, from the acceptance by the lender of the $275 and $225 notes, was, that the $500 was loaned to

Crawford, and that the lender agreed to look to him exclu- sively for the payment. This presumption was not conclusive, but might be rebutted by proof.

That Mitchell subsequently participated in the use of the money borrowed would seem rather to give an occasion for an application of the legal presumption, than to disprove it.

The subsequent use or application of the money was imma- terial, if Mitchell was not originally liable as borrower.

If the debt was the debt of Crawford alone, and Mitchell was not originally liable, then any subsequent parol promise by Mitchell to pay the $275 note was void by the statute of frauds.

If the testimony was admissible to show an original liability, the promises proved by Dusenberry, under the circumstances, had little if any weight.

The testimony of Crawford, that the $500 was loaned and advanced to him and Mitchell, should, I think, under the pleadings and the other facts and circumstances of the case, have been looked upon as a mere statement of his legal con- clusion.

Upon the whole, although I think the charge of the judge would have been well enough had there been sufficient evi- dence to authorize him to submit the question of Mitchell's original liability for the amount of the $275 note to the jury, yet I think he erred in submitting that question to the jury at all; and I think Mitchell has a right to avail himself of that error on this motion for a new trial.

He excepted to the whole charge—he objected to all the evidence given and offered on the part of the plaintiff to show his liability, and he moved for a non-suit which could not be granted, because the plaintiff had an undisputed right to re- cover against him on three of the notes.

I cannot avoid the conclusion, from a careful examination of this whole case, that the trial below was a second same at- tempt (for it appears that there had been a trial before), on the part of the plaintiff, to make the defendant Mitchell liable on the $275 note which he never signed, by evading the statute

of frauds, and trying to get rid of the plain legal presumptions arising from the unexplained intentional acceptance by Peter Underhill of the $225 note signed by Mitchell as surety, and of the individual $275 note of Crawford for the $500 loaned.

My conclusion is, that there should be a new trial, with the costs of this motion for a new trial to abide the event, unless the plaintiff elects within ten days to take judgment against the defendants for the amount of the three notes signed by Mitchell with costs, exclusive of the costs on this motion, for a new trial. If the plaintiff so elect, then the motion for a new trial is denied without costs to either party on such motion.

I think the plaintiff is entitled to judgment against the defendant Crawford alone, for the amount of the $275 note signed by him alone.